**GREEN v. UNITED STATES.**

**HIGGINS v. UNITED STATES.**

**MARKS v. UNITED STATES.**

Nos. 4324, 4325, 4326.

United States Court of Appeals First Circuit.

Heard March 2, 1949.

Decided Aug. 25, 1949.

Wilbur Hollingsworth, Boston, Mass., for appellants.

Charles Miller, Assistant U. S. Attorney, Boston, Mass. (William T. McCarthy, United States Attorney, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and CLARK and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The appellants were separately indicted in the court below in three counts for stealing mail matter in violation of 18 U.S.C.A. § 317, now 18 U.S.C.A. § 1708. In count one of each indictment it was charged that the defendant named therein, on or about October 1, 1946, "did steal, take and abstract a letter containing a bank statement from the authorized mail depository of Mrs. Janet H. Jones", of Boston. In count two of the indictments the defendants were charged with the identical offense with respect to the authorized mail depository of Sidney E. White, of Allston, and in count

three the defendants were charged with the same offense with respect to the authorized mail depository of Mabel G. Bradfield, of Brookline. The defendants were tried together by a jury on pleas of not guilty; verdicts of guilty were returned as to each defendant on all three counts of the indictments, and the defendants were sentenced to four years imprisonment on each count, the sentences to run concurrently, and "to begin upon the release of defendant from institution where he is now serving a sentence under a judgment of a court of the Commonwealth of Massachusetts." Each defendant thereupon appealed to this court and we ordered consolidation and permitted prosecution in forma pauperis.

The government did not produce any eye witness to establish its charges. To prove the thefts alleged it relied upon circumstantial evidence and the testimony of an informer as to admissions made by the defendants while they and the informer were fellow prisoners awaiting trial in the Federal House of Detention in New York. And to charge each defendant with each separate theft of mail matter alleged, it relied upon the statutory provision making an aider or abettor a principal. Formerly 18 U.S.C.A. § 550;[1] now 18 U.S.C.A. § 2.

The Government's case rests in large measure upon the testimony of one Shulman, a former accomplice of the defendants, who turned state's evidence. This witness said that he met the defendants in Boston by pre-arrangement on September 30, 1946, and that on that day all four of them together drove out to Somerville in a rented car. There the defendants got out of the car and went away, and when they returned a short time later the defendant Green remarked that there "was no luck", but probably "the bank statements would come out" tomorrow, whereupon they returned to their respective hotels. The next morning, Shulman testified, he met all of the defendants at a hotel, and at that time the defendant Higgins told him that he

was "too inexperienced to go after any mail boxes", so, instead of "hanging around the hotel room" waiting for them to "get back with any news, you just go out with Marks." The witness said that he did so, and he and Marks went to the Coolidge Corner section of Brookline where Marks left the car saying he would "scout around" and "see what luck" he had; that Marks returned in about half an hour saying he "had fairly good luck", and that they then returned to the hotel from which they had set out. Shulman said the other defendants joined them in about an hour and then "the three of them huddled around the table at the other end of the room, and I saw them take out big brown Manila envelopes out of their pockets. And I just sat on the bed, being very disinterested, and they didn't let me in their conversation, so I thought it was none of my business and I just sat there."

Following this testimony the witness described in detail certain checks made out to cash given to him by Marks and purportedly drawn in one instance by Janet H. Jones, in another by Sidney E. White, and in two instances by Mabel G. Bradfield, and how, acting upon instructions from the defendants, he cashed those checks through innocent third persons as intermediaries and delivered the proceeds to the defendants who divided those proceeds with him share and share alike.

In addition the Government put Jones, White and Bradfield on the stand who testified to finding the checks described in detail by Shulman in their respective bank statements for October, 1946, and that they had not drawn them. Mrs. Jones testified that on October 2, 1946, at "about quarter of ten" she took her mail, including her bank statement, out of her mail box in the vestibule of the apartment house in which she lived, glanced through it, and put it back; that "around twelve o'clock" when she returned her bank statement was missing from her mail box; and that "in a couple of days" she "noticed that it was

---

[1] "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, coun- sels, commands, induces, or procures its commission, is a principal."

back." Neither Sidney White nor Mabel Bradfield testified to noticing any delay in receiving their bank statements for the month of September 1946.

The Government also put a handwriting expert on the stand who expressed the opinion that the drawer's names on those checks were traced forgeries.

Moreover the Government introduced the testimony of the informer, referred to earlier in this opinion, who testified to conversations with Marks in the presence of the other two defendants while all four were under detention in New York in the course of which Marks said "We are here charged with mail theft in Boston, Mass.," and then went on to explain the nature of the charges upon which he and his associates were to stand trial, saying in substance that "they would go around to different places toward the end of the month when the banks returned the vouchers, cancelled vouchers with bank statements, and they would extract from the mail box such envelopes that indicated these statements and checks were in it. They would then take it to some office which they rented, and they would steam it open, take out the check, and then write another check, tracing the signature of this old check. And to determine the amount of the check they would write, they would take into consideration the bank balance on the transcript." The informer further testified that Marks described in detail the method by which the depositor's genuine signature on the cancelled check was reproduced on the forged check to be passed, and then said when "this was accomplished, the cancelled check would be returned to the envelope, and the envelope was sealed up," and "then that same envelope was put back in the box from where it was originally taken."

█ ■ It seems to us that the evidence outlined above, even disregarding the testimony in corroboration of Shulman (which we see no need to detail) given by hotel clerks and the innocent persons who actually passed the admittedly forged checks of Jones, White and Bradfield, is amply sufficient to warrant the jury's conclusion that beyond a reasonable doubt the defendants aided, abetted and counseled with one another to commit the crimes charged in the indictments.

But the appellant contend that it was error to admit any evidence of the "state crimes of forgery, uttering and larcenies by cheque, all subsequent to the mail thefts alleged", on the ground that the admission of such testimony violated "the well-established rule which excludes evidence of other crimes." The contention is lacking in merit.

█ It is clear that irrelevant testimony tending to show the commission of a crime separate and distinct from the one with which the defendant is charged is inadmissible. But it is equally clear that testimony otherwise relevant is not rendered inadmissible merely because its tendency is to prove the commission of some other crime. The applicable rule with respect to the admissibility of evidence having a tendency to prove the commission of other crimes was well stated in Bracey v. United States, 79 U.S.App. D.C. 23, 142 F.2d 85, 87, certiorari denied 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589, as follows:

"The general rule is that, upon the trial of an accused person, evidence of another offense, wholly independent of the one charged, is inadmissible. However, there are many well established exceptions to this rule, raised by the special circumstances of particular cases; to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused may be made to appear. Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. Such evidence is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object; as well as to establish

544·

identity, guilty knowledge, intent and motive."

The applicability of this rule to the circumstances of the present case is too clear to call for demonstration.

The appellants' further contention that the testimony of the informer should also have been excluded has been considered but found too lacking in merit to warrant discussion.

In addition the appellants contend that the evidence introduced by the Government in the case at bar is fatally defective in that proper proof that the mail boxes used by Jones, White and Bradfield, were authorized depositories for mail is entirely lacking. They concede that in actual fact the mail boxes used by Jones, White and Bradfield were duly authorized by regulation of the Postmaster General as depositories for mail. Postal Laws and Regulations (1940) § 947 (1), (2), and (3). And they concede that the above regulation was published in the Federal Register and that "an order of the Postmaster General duly published in the Federal Register can be judicially noticed." 44 U.S.C.A. § 307. Their position is that the court below in discretion ought not to have taken judicial notice of the regulation in question because it was not specifically brought to that court's attention by counsel for the Government at the trial.

Perhaps counsel for the Government took a chance in not bringing the regulation to the court's attention, but we are not aware of any authority for the proposition that a court cannot if it wishes take judicial notice sua sponte of any matter proper for it to notice.

The defendants' contention that their motion for acquittal should have been granted as to the first count of the indictments on the ground that Mrs. Jones, by taking her bank statement out of her mail box before it was stolen, terminated the protection afforded to mail matter by the statute under which the indictments were drawn, does not call for consideration for the reason that the sentences imposed on the defendants on each count are concurrent. United States v. Trenton Potteries

Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; cf. Ekberg v. United States, 1 Cir., 167 F.2d 380.

Still other contentions advanced by the defendants have been considered but we find them too insubstantial to warrant discussion.

It will suffice to say in conclusion that a careful examination of the record discloses no prejudicial error.

The judgment of the District Court is affirmed.