UNITED STATES of America,
Appellee,

v.

George Washington BLOUNT, Defend-
ant-Appellant.

No. 61, Docket 23665.

United States Court of Appeals
Second Circuit.

Argued Oct. 11, 1955.

Decided Feb. 2, 1956.

Leonard Maran, New York City (Murray E. Gottesman, New York City, on the brief), for defendant-appellant.

Myles J. Ambrose, Asst. U. S. Atty. for Southern District of New York, New York City (Paul W. Williams, U. S. Atty., New York City, on the brief), for appellee.

Before FRANK, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal from a judgment convicting appellant of transmitting a threat by telephone in interstate commerce with intent to extort money in violation of 18 U.S.C. § 875(b). Two questions are raised: (1) Did the trial court err in refusing defendant's request to charge on the defendant's theory of bribery? (2) Did the trial court err in admitting evidence of a subsequent "blackmail" attempt as relevant to defendant's intent to extort money?

The facts are in dispute and the jury resolved them against the defendant. The theory of the prosecution was that the defendant, an Army sergeant, on returning from Japan in September 1951 called the victim, Joseph Schalet, and informed him over long distance telephone from Pittsburgh, California to New York, N. Y., to send $4,000 if " * * * you would want to see your son back alive * * * " since " * * * there are a lot of accidents happening, there are a lot of casualties, they are not all war accidents or war casualties * * * " The defense theory was that prior to leaving Japan, the victim's son, Victor Schalet, gave the defendant his father's name, address and telephone number and asked the defendant to call him and say that his son was all right. Appellant testified that he made the call as requested and that during the ensuing telephone conversation Joseph Schalet asked him if there was any possibility of his son getting out of the service in any way. Appellant went on to testify that he then concocted a story that a fictitious "Major Snow," a medical officer, would get his son out for $4,000, that the money was subsequently sent as a bribe for "Major Snow," and that he received and retained the $4,000 which the victim sent, but told the victim that he had delivered the money to "Major Snow." [1]

At the conclusion of the trial the defendant requested the trial court to charge the jury on the distinctions between the crimes of extortion and bribery and to instruct the jury to find the defendant not guilty if it found that the alleged victim paid the money as a result of a scheme which did not include threats. The court refused to define crimes other than extortion but instructed that the communication of a threat of injury was a necessary element of guilt. In charging the jury on the crucial question of the defendant's intent in receiving the money, the court

framed the question: "Was this a loan? Was this a bribe? Was this extortion?"

Thereafter during its deliberation, the jury sent out a note asking, "Can we give a verdict of not guilty and direct that the defendant be retried for bribery? * * * " The court replied as follows:

"The answer to that question is no. The question, as I said during my charge, and I want to make it very clear, is this, and there is only one question before you, and that is, is this defendant guilty or not guilty of the crime charged in the indictment? That is, that on, as I recall it, on September 24, 1951, with intent to extort money, he communicated with Mr. Joseph Schalet, and that the communication contained a threat to injury [sic] Mr. Schalet's son. That is the only crime which you may consider.

"I have explained the elements of that crime to you.

"It is very important, as a matter of fact, it is most important to everyone that you only consider that crime. If you start to speculate about other crimes, bribery or anything else, and what might be done or what might not be done, I mean, there are any number of technical and substantial problems which I have never tried to explain to you. I haven't told you anything about the crime of bribery. Whether there is bribery here or whether there isn't is no concern of you. The question is, is there extortion, in the sense that this indictment charges it? That is the question that you must consider."

▮▮ The most the defendant was entitled to upon request was a charge as to his factual theory of the defense. Calderon v. United States, 5 Cir., 279 F. 556, 558; Hendrey v. United States, 6 Cir., 233 F. 5, 18; Cf. Marson v.

---

1. This testimony was shown to be materially in conflict with appellant's earlier testimony before a Grand Jury.

United States, 6 Cir., 203 F.2d 904, 912. Since the essence of the defendant's case was a factual theory that the money was paid not as a result of threats but as part of an abortive scheme to bribe "Major Snow," we think the charge as thus expanded was not inadequate. Especially is this so since the judge in his original charge had posed the question: "Was this a loan? Was this a bribe? Was this extortion?" We agree with the trial judge's statement that " * * * my duty is to clearly define the crime of extortion, not to go in and start defining other crimes which might be drawn in by the defendant." For him to have given the legal definition of bribery, an offense not charged, would have tended to confuse the jury rather than to clarify. Of course, if the defendant's testimony had injected facts which, although consistent with the government's charge and proof of extortion, constituted a confession and avoidance, he would have been entitled to an appropriate charge as to the legal issues involved.[2] But that is not the case here.

██ The second question raised by the appeal arose out of a subsequent attempt, in June of 1953, by the appellant to "blackmail" the victim. As to this the victim testified that the appellant called him from Pensacola, Florida,[3] and told him " * * * I have to blackmail you this time for $5,000, and you're going to send that $5,000 in one hour." The trial court admitted this testimony over objection on the theory that it was a similar offense relevant to show defendant's intent in taking the money from the victim on the prior occasion. 2 Wigmore on Evidence, §§ 302, 316, 352(2) (3rd ed.1940).

The appellant contends that evidence of appellant's intent in June of 1953 is too remote to evidence his state of mind at the time of the alleged criminal act two years prior, and that the evidence was irrelevant and prejudicial since it related to a "blackmail" and not an extortion attempt. Whether the 1953 conversation was too remote was for the trial judge to say. Wigmore, § 316 (2). In the context here the ruling was made within the bounds of discretion. As to the objection that blackmail is not sufficiently similar to extortion to have probative value as to defendant's intent, the evidence was properly admitted under the cautionary instructions of the judge that, "There is a technical difference between blackmail and extortion, and unless that conversation referred to extortion in the same sense that I have defined it, with respect to what we will call the main transaction in 1951, disregard it. In other words, unless the word 'blackmail,' if it was used in that conversation, was used as a colloquial reference to extortion of the type which I have elaborated here with you, why, disregard it * * *" While there is a technical distinction between the crimes of blackmail[4] and extortion[5] both in-

---

2. Lufty v. United States, 9 Cir., 198 F.2d 760, 762, 33 A.L.R.2d 879 (entrapment defense); Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612, 617 (insanity defense); Bird v. United States, 180 U.S. 356, 361–362, 21 S.Ct. 403, 45 L.Ed. 570 (self-defense).

3. The appellant in his testimony admitted that he made the telephone call but gave a materially different version of the ensuing conversation.

4. "§ 873. Blackmail
"Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined not more than $2,000 or imprisoned not more than one year, or both."

5. "§ 875. Interstate communications
* * * * * *
"(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

volve the obtaining of property by means of threats. Since it was the appellant's testimony that he had obtained the money without any threats, we think the evidence was properly received for its probative effect on the issue of defendant's intent in taking the money. See United States v. Feldman, 2 Cir., 136 F.2d 394.

Affirmed.