**UNITED STATES of America,
Plaintiff,**

v.

**Guy J. BARBARO, Defendant.**

**Crim. A. No. 71–603–J.**

United States District Court,
D. Massachusetts.

Jan. 25, 1974.

Daniel G. Harrington, Boston, Mass., for defendant.

William A. Brown, Asst. U. S. Atty., Boston, Mass., for plaintiff.

## DECISION ON APPEAL FROM A JUDGMENT OF CONVICTION BY A MAGISTRATE

JULIAN, Senior District Judge.

This is an appeal from a judgment of conviction by a magistrate for violation of 18 U.S.C. § 641; Guy J. Barbaro was convicted of receiving, concealing and retaining property of the United States Army, a .45 handgun, with the intent to convert the property to his own use and gain, knowing it to be embezzled, stolen and purloined. The magistrate sentenced Barbaro to one year, six months to be served, balance suspended, and placed him on probation for two years. Execution of sentence was stayed pending appeal. The scope of appeal is the same as on an appeal from a judgment of a district court to a court of appeals. Magistrates' Rule 8(d).

During testimony of T. Foster, Assistant Administrative Supply Technician at the Boston Army Base, the magistrate admitted a report[1] of Army officers who did not testify. Capt. McGray, identified in the report as the accountable officer,[2] signed one portion of the report. He certified that forty-nine caliber .45 pistols, which were listed by serial number, were removed by a person or persons unknown from the arms room. The listed serial numbers included 2312480, that of the pistol which is involved in this case. By affidavit in the report, Lt. Connolly swore this description of the loss was accurate.[3] According to the report, Maj. Provencher, the surveying officer, was summoned to investigate the removal on the day it was discovered. The section of the re-

---

1. Magistrate's Exh. 3. The report was admitted with leave to supply photographic reproductions. (Tr. 57, 60, 63.) The reproductions are before this Court; no claim is made that these reproductions are inaccurate.

2. "An accountable officer is an officer . . . who is accountable for the storage and issue of Government property and is specifically charged with the maintenance of records in connection therewith." AR 735–11, ¶ 1–6(c), (July 11, 1967). See AR 735–11, ¶¶ 4–18, 4–19.

3. "The affidavits will be accomplished by the responsible officer or other individual having knowledge of the facts." AR 735–11, ¶ 4–19(a) (July 11, 1967).

port subscribed by Maj. Provencher describes his observation of the physical state of the arms room after the disappearance of the weapons.[4] Maj. Provencher also recorded his conclusions that the loss resulted from "forcible entry and theft . . . through no fault of the responsible officer" and that the "loss occurred through theft by party or parties unknown during a period of time when the unit area and arms room were closed." Therefore he recommended: "That pecuniary liability (of the accountable or responsible officer) be found not to apply to the loss of the property." The basic issue presented by this appeal is evidentiary: whether the magistrate committed reversible error in admitting this report.

The report, of course, is hearsay: it was offered to prove the truth of extrajudicial statements (that the weapon was removed in an unauthorized manner from the Army) contained within the report. It was inadmissible unless some exception to the hearsay rule applied. Two exceptions to that rule are relevant: 28 U.S.C. § 1732 (records made in the regular course of business) and 28 U.S.C. § 1733 (government records).

### 28 U.S.C. § 1732

■ 28 U.S.C. § 1732 makes records made in the regular course of business admissible.[5] Records of departments or agencies of government, if kept in the regular course of the departments' or agencies' business or activity, are admissible under § 1732. E. g., United States

v. Friedland, 444 F.2d 710 (1 Cir. 1971); LaPorte v. United States, 300 F.2d 878 (9 Cir. 1962); Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467 (3 Cir. 1950). The problem is whether the Army report is a record made in the "regular course" of business.

The leading case interpreting the phrase "regular course" is Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). In Palmer, a train engineer made a statement concerning a train accident. He made the statement at the railroad office after an interview by a railroad official. Before trial, the engineer died. The Supreme Court ruled the statement was properly excluded in a negligence trial which resulted from the train accident. Interpreting the predecessor of 28 U.S.C. § 1732, the Court ruled that the report was not made in the "regular course" of business since such "reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." 318 U.S. at 114, 63 S.Ct. at 481. "[T]here is nothing in the background of the law on which this Act was built or in its legislative history which suggests for a moment that the business of preparing cases for trial should be included." Id.

■ Unlike the engineer's statement in Palmer, the Army report in this case is not a report prepared for use in litigation such as this. Rather, the Army report is made in the regular course of business. As stated in Palmer, " 'regular course' of business must

---

4. "I observed that the wood and wire mesh outside door to the arms room was damaged as if by forcing or kicking, and its padlock broken. Inside the room a padlock used to secure the steel door of a steel cage housing a pistol rack was also broken."

5. 28 U.S.C.A. § 1732(a) provides:
    "(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if

made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." 318 U.S. at 115, 63 S.Ct. at 481. The inherent military nature of the Army and its role in the protection of the populace necessitate close supervision of its property and weapons and require reports concerning their disappearance. The Army requires reports such as Exhibit 3 in this case to fix accountability when "loss, destruction, damage, or unserviceability" of property occurs. AR 735–10, AR 735–11.[6] This is the regular course of business for the Army. Furthermore, the decisions which interpret *Palmer* "hinge on motivation" to misrepresent of the person making the record. *See, e. g.,* Note to Prop. F. R. Ev. 803(6), 56 F.R.D. 183, 309–311 (1972) and cases there cited. In this case the evidence does not suggest the existence of any improper motive on the part of the officers who made the report. The report was made in accordance with standing operating procedures on the basis of the reporting officers' personal knowledge and observations.[7] It was not prepared in anticipation of this litigation. It was made shortly after the facts recorded had occurred. This Court rules that Exhibit 3 was properly received in evidence under 28 U.S.C. § 1732.

### 28 U.S.C. § 1733

■ The report also is admissible as a government record under the provisions of 28 U.S.C. § 1733,[8] since the report was made by United States Army officers in the course of duty, pursuant to Army Regulations AR 735–10 and AR 735–11,[9] in order to establish accountability for the loss of government property. It reveals, from the personal knowledge of those signing the report, the serial numbers of the missing weapons and the condition of the arms room in which they had been stored.[10] If the of-

---

6. These Army regulations were prescribed pursuant to 10 U.S.C. §§ 4831, 4832, 4835–4840.

The Report of Survey contains a reference to AR 735–11. Further, an appellate court may take notice of a federal regulation which has not been called to the attention of the trial court. Batista v. Nicolls, 213 F.2d 20 (1 Cir. 1954); Green v. United States, 176 F.2d 541 (1 Cir. 1949). Copies of AR 735–10 and AR 735–11 as in effect at all times material to this case have therefore been submitted by the United States Attorney. AR 735–11 "prescribes the accounting procedures to be used when property of the Department of the Army is lost, damaged, or otherwise rendered unservicable or is destroyed, and provides methods by which responsible individuals may obtain relief from property responsibility by means of the report of survey system or other authorized methods." AR 735–11, ¶ 1.1 (July 11, 1967). AR 735–10 prescribes the Army's policy regarding such losses and pecuniary liability and sets forth minmum standards for relief from property responsibility. AR 735–10 (April 26, 1967).

In order to implement the Army's policy on losses and liabilities, reports of surveys are required. See AR 735–11, ¶ 3–1.

7. Lack of personal knowledge on the part of the person making the record reflects on credibility, not admissibility. 28 U.S.C. § 1732(a). The challenged report in this case is different from police reports containing statements based upon hearsay statements. Such reports have been ruled inadmissible. *See, e. g.,* Gencarella v. Fyfe, 171 F.2d 419 (1 Cir. 1948); United States v. Graham, 391 F.2d 439 (6 Cir.), cert. denied, 390 U.S. 1035, 88 S.Ct. 1433, 20 L.Ed.2d 294 (1968); 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968); *see also* Note to Prop. F. R. Ev. 803(6), 56 F.R.D. 183, 308–309 (1972); *but see* Taylor v. Baltimore & O. RR. Co., 344 F.2d 281, 285–286 (2 Cir. 1965); United States v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (2 Cir. 1962). This case is, however, closer to United States v. Smith, 452 F.2d 638, 640 (4 Cir. 1971).

8. 28 U.S.C.A. § 1733 provides that originals or properly authenticated copies of "Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept."

9. See note 6, *supra.*

10. To the extent that Exh. 3 specifies which weapons were missing and the physical state of the arms rooms, it is based on personal knowledge and observation, not evaluations. Maj. Provencher, "[h]aving determined the

ficers had appeared, they would have been permitted to testify to the facts contained in the report.

The report in question was properly admitted under 28 U.S.C. § 1732 and also under 28 U.S.C. § 1733. The magistrate's finding of guilty is fully warranted by the evidence.

The conviction is affirmed.

actual facts and circumstances by a preponderance of the evidence," AR 735-11, ¶ 5–7(b) (July 11, 1967), reached the opinions that security measures were sufficient

and that pecuniary liability should not be imposed. These opinions, however, are not material to whether the weapons were removed without authorization.