Joseph SOUSA (No. 10478), Joseph W. Eastridge (No. 10511), Richard C. Richter (No. 10714), and Michael A. Diamen, a/k/a Salvatore M. Infantolino (No. 10772), Appellants,

v.

UNITED STATES, Appellee.

Nos. 10478, 10511, 10714 and 10772.

District of Columbia Court of Appeals.

Argued Feb. 14, 1978.

Decided March 16, 1979.

Rehearing and Rehearing En Banc Denied in Nos. 10478, 10511 and 10772, May 17, 1979.

Leroy Nesbitt, Washington, D. C., for appellant Sousa.

David C. Niblack, Washington, D. C., for appellant Eastridge.

John W. Karr, Washington, D. C., for appellant Richter.

John E. Kilcarr, Arlington, Va., for appellant Diamen.

E. Thomas Roberts, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Joseph Guerrieri, Jr., and Martin J. Linsky, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge, and PRYOR, Associate Judge, Superior Court of the District of Columbia.[*]

\* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. We have examined the multitude of other contentions made by appellants and find them to be without merit.

NEWMAN, Chief Judge:

Appellants Sousa, Eastridge, and Diamen were tried by a jury and found guilty of first-degree murder while armed, D.C.Code 1973, §§ 22–2401 & –3202. Appellant Richter, at the same trial, was found guilty of two counts of assault with a dangerous weapon, D.C.Code 1973, § 22–502, and carrying a dangerous weapon, D.C.Code 1973, § 22–3204.

Appellants raise a number of contentions on appeal. We deem it appropriate to address in detail only those pertaining to joinder and severance, and the sufficiency of the evidence as to appellant Richter. Finding an abuse of discretion in the trial court's refusal to sever the assault and carrying a dangerous weapon charges against appellant Richter from the murder charges against the remaining appellants, and finding that the evidence was insufficient to sustain one of the assault counts, we reverse appellant Richter's convictions. Finding no other reversible error, we affirm the convictions of appellants Sousa, Eastridge, and Diamen.[1]

## I. THE FACTS AND TRIAL PROCEEDINGS

On the evening of November 1, 1974, appellants and their companions (the "Richter group", as they were referred to repeatedly at trial) arrived at the Godfather Restaurant located in the 4900 block of Wisconsin Avenue, N.W., Washington, D. C. The Richter group arrived from Virginia in two cars and parked on Fessenden Street, a short distance from the restaurant. They entered the restaurant but were asked to leave by the doorman acting on instructions from the owner who was familiar with the Richter group. They started to leave. Jones,[2] one of Richter's companions, picked up a large bag of popcorn and carried it

2. Jones was also found guilty of first-degree murder while armed, but did not appeal his conviction.

from the restaurant. As they left the restaurant they encountered the decedent Johnnie Battle, Armon Allen, and Joseph Brown (the "Battle group"). Richter accused two members of the Battle group of insulting him, but both men denied the allegation. Both groups left the restaurant with the Richter group following the Battle group towards Fessenden Street. During this walk, the Richter group continued to taunt the Battle group. Allen, who became separated from the Battle group, was frightened, took a metal comb from his pocket, and was pushed into Fessenden Street by a member of the Richter group. The push turned him around so that he was facing Richter who had a knife at his side. Two other members of the Richter group approached Allen, but Richter told them not to do anything and he ended the confrontation without further ado. Allen remained at the corner of Fessenden and Wisconsin, while appellants and their companions walked west on Fessenden. Meanwhile, Brown and Battle went to Battle's car where Battle armed himself with a pistol, started walking back towards Wisconsin Avenue, and there met the Richter group. Jones took the popcorn he was carrying and threw it at Battle while insulting him. Brown observed that persons in the Richter group were armed with knives. Battle drew his pistol and began firing. One shot hit Bruce Hunter, a member of the Richter group. Richter immediately left the scene to take Hunter to Arlington Hospital. Brown began running towards Wisconsin and Fessenden where he saw Allen. Before they both returned to the Godfather to seek refuge, they observed several members of the Richter group chasing Battle across Wisconsin Avenue into a small park. The doorman and owner of the Godfather also observed this chase. Another customer at the Godfather saw the chase, as did David Brady who was getting into his car on Wisconsin Avenue. When Battle reached Emery Street, he tripped, and his pursuers jumped him from two different directions and began beating and kicking him. The Godfather's owner was outside the restaurant and saw two cars with Virginia tags

pass. The police arrived and spoke to the owner who pointed out one of the cars. The car then drove through a red light and the officer pursued. When the officer stopped the car it was occupied by Sousa, Diamen, Jones, and Eastridge. The owner identified the four as having been in the Godfather and as part of the group that was harassing Brown, Allen, and Battle. The men were ordered out of the car, and Diamen sat down on a small grassy area. A knife was found under the front seat of the car, and bloody newspapers were found on the back seat. Knives were also found on Eastridge and Jones. Blood was found on Jones' clothing and boots, Diamen's pants, and Sousa's shirt. In the meantime, the body of Johnnie Battle was discovered by four civilians. The appellants Sousa, Eastridge, and Diamen were arrested and charged with murder. Richter was arrested a few blocks from the Virginia hospital, and a knife was seized from his belt. The day after the murder, a witness discovered a knife in a pile of leaves near the grassy spot where Diamen waited while the car was being searched.

Appellants' trial lasted five weeks with the government presenting 36 witnesses and over 75 exhibits. All defendants charged with first-degree murder while armed admitted their presence at the Godfather and in its vicinity on the night of the murder, but denied participation in the murder. Richter's defense to the assault charges was self-defense.

Dorothy Willett testified that Sousa and Eastridge, while free on bond, met her on several occasions. Her testimony revealed that both Sousa and Eastridge admitted their participation in the murder. She testified, in part:

Well, Nick [Sousa] said that it was a nigger that got Kenny and we got us one. And he said—I asked him at that time, I asked him, "Nick, you didn't really do anything like that, did you."

He said, "Not me, he did it." And he looked at Wayne [Eastridge].

And Wayne said to Nick, said, "You're the one that cut his nose off."

And Nick said, "well, yeah, I did that, but you sliced his ear."

She further testified that, in the same conversation, Sousa stated, "If it had not been for the one-way street, I would have gotten away."

## II. JOINDER

Joinder of two or more defendants and multiple offenses in one indictment for trial is authorized by Super. Ct. Cr. R. 8(b) which provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.[3]

This rule has been interpreted to create a presumption "that persons jointly indicted should be tried together," *Hall v. United States*, 83 U.S.App.D.C. 166, 168, 168 F.2d 161, 163, *cert. denied*, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948), with the proviso that those cases so joined will be severed if necessary to ensure a fair trial. *See United States v. Gambrill*, 146 U.S.App.D.C. 72, 87, 449 F.2d 1148, 1163 (1971). The "series of acts" referred to in Rule 8(b) has been defined as "one in which the individual offenses are connected or interrelated in such a manner that proof of charges against one defendant would necessarily have to be introduced in proving the jointly-charged offenses, or that the government otherwise will benefit without further prejudicing the defendant." *Davis v. United States*, D.C. App., 367 A.2d 1254, 1261 (1976), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977).

■ The court must strictly monitor joint trials due to the " 'presumptive possibility of prejudice to the defendant.' " *Davis v. United States, supra* at 1263, quoting *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966). Nevertheless, joinder will be upheld

■ where the offenses are committed as a means to a specific common end, or where [the appellants] are directed toward some shared goal; (2) where one offense logically leads to another; and (3) where the offenses are part of a common scheme or plan, involving the same place, a short period of time, and a similar modus operandi. [*Davis v. United States, supra* at 1262 (footnotes omitted).]

■ There is also a strong policy favoring joinder because it "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *Johnson v. United States*, D.C.App., 398 A.2d 354 at 367 (1979), quoting *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1968), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969); *United States v. Hines*, 147 U.S.App.D.C. 249, 266, 455 F.2d 1317, 1334, *cert. denied*, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972); *United States v. Robinson*, 139 U.S.App.D.C. 286, 289, 432 F.2d 1348, 1351 (1970).

■ Due to the ever present danger of prejudice to the defendants from a joint trial, courts scrutinize closely the joinder for trial of an offense occurring at a different place and at a different time from a capital offense also charged. *See Gregory v. United States*, 125 U.S.App.D.C. 140, 144, 369 F.2d 185, 189 (1966). The problem becomes all the more vexing when the joinder of offenses relates to different defendants.

In this case, we need not decide whether joinder was proper,[4] since assuming that it was, we hold that severance of Richter's charges was mandated under Super. Ct. Cr. R. 14.

---

3. This rule is identical to Fed.R.Crim.P. 8(b). Thus, we find guidance from the federal cases interpreting this rule. D.C.Code 1973, § 23-311(c), codifies the rule.

4. *But see Davis v. United States, supra; Gregory v. United States, supra.*

## III. SEVERANCE

### A. *Generally*

Super. Ct. Cr. R. 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.

■■ The court has a continuing obligation to monitor for prejudice and to sever the offenses for trial where necessary to avoid prejudice. *Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *United States v. Leonard,* 161 U.S.App.D.C. 36, 46, 494 F.2d 955, 965 (1974); *United States v. Wilson,* 140 U.S. App.D.C. 220, 225–26, 434 F.2d 494, 499–500 (1970). The grant or denial of a motion for severance is within the sound discretion of the trial court, and this court will only reverse upon a showing of an abuse of that discretion. *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Johnson v. United States, supra* at 367; *Ellis v. United States,* D.C.App., 395 A.2d 404 (1978); *Hamilton v. United States,* D.C.App., 395 A.2d 24 (1978); *Christian v. United States,* D.C.App., 394 A.2d 1, 20 (1978); *Williams v. United States,* D.C. App., 382 A.2d 1, 8 (1978); *Clark v. United States,* D.C.App., 367 A.2d 158, 160 (1976). Since the appellants made timely and specific objections to the joint trial, the question for review is " 'whether the trial record manifests a sufficient possibility of undue prejudice by reason of such joinder to indicate an abuse of discretion by the trial judge.' " *Hackney v. United States,* D.C. App., 389 A.2d 1336, 1344 (1978), quoting *Bridges v. United States,* D.C.App., 381 A.2d 1073, 1074–75 (1977).

■ In reviewing the exercise of discretion by the trial court, we make two distinct classes of inquiries. "[We] must determine, first, whether the exercise of discretion was in error and, if so, whether the impact of that error requires reversal. It is when both of these inquiries are answered in the affirmative that we hold that the trial court 'abused' its discretion." *Johnson v. United States, supra* at 367.

### B. *Disparate Evidence*

Courts have recognized that " 'a disparate quantum of evidence against each of two codefendants may conceivably require a severance under some circumstances,' " *United States v. Leonard, supra,* 161 U.S. App.D.C. at 48, 494 F.2d at 966, quoting *United States v. Gambrill, supra,* 146 U.S. App.D.C. at 83, 449 F.2d at 1159, but only if the evidence against one is " 'far more damaging.' " *United States v. Bolden,* 169 U.S. App.D.C. 60, 69, 514 F.2d 1301, 1310 (1975), quoting *McHale v. United States,* 130 U.S. App.D.C. 163, 164, 398 F.2d 757, 758, *cert. denied,* 393 U.S. 985, 89 S.Ct. 462, 21 L.Ed.2d 447 (1968). *See United States v. Kelly,* 349 F.2d 720, 758–59 (2d Cir. 1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

While the cases dealing with disparate evidentiary quanta have generally involved codefendants charged with the same offense, the legal principle underlying those cases—the determination of guilt of a defendant should be based on evidence admissible against that defendant—applies with at least equal force to joinder of defendants charged with offenses which are separate and distinct.

■ In this case, the assault and weapon charges against Richter which were distinct in time and place, were joined with charges of first-degree murder while armed against the other defendants. The evidence of the murder was overwhelmingly the major portion of this five-week trial while there was comparatively meager evidence on the assault and weapon charges. The evidence of the murder would not have been admissible at a separate trial of Richter on the assault and weapon charges. We conclude that the trial court erred in denying severance.

■■ Having found error, we must determine whether it is of a magnitude to require reversal. The significant prejudice

**1042**

to Richter arose from the association of him throughout the trial with the evidence proving the bloody and grotesque killing of Battle. That some of this rubbed off on Richter, we cannot doubt. The government's evidence to prove the assaults, although legally sufficient on one count, *see* IV, *infra,* was meager. And of particular significance was the reference to the defendants throughout the trial as the "Richter group" thereby associating Richter in the minds of the jurors with the murder he was not charged with committing.[5] We are satisfied that the prejudice to Richter was of a magnitude to mandate reversal. Thus, we hold the trial court abused its discretion in denying severance to Richter.[6]

### C. *Antagonistic Defenses*

■ Severance may be required "when the defendants offer conflicting and irreconcilable defenses so that the jury 'will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Johnson v. United States, supra* at 368, quoting *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). "This requirement contemplates a clear and substantial contradiction between the respective defenses." *Williams v. United States, supra* at 8. The fact that "a defendant would have had a better chance of acquittal had he been tried alone" is not, in and of itself, a basis for holding that the denial of severance constitutes an abuse of discretion. *Johnson v. United States, supra* at 368, quoting *Clark v. United States, supra* at 160. When confronted with a Rule 14 motion for severance based on antagonistic defenses,

[t]he proper focus of the trial court's inquiry under *Rhone*—and of this courts on appeal—is the *danger* of the jury

drawing an improper conclusion of guilty from the conflict of defense alone. The inquiry is not simply whether there is sufficient competent evidence to sustain the conviction. Conflicts in defendants' evidence occur after the government has rested. Thus, a condition precedent for the existence of a *Rhone* problem is the government having presented a sufficient case to sustain a conviction, if obtained. Stated another way, the task of the court is in assessing *the risk* of the jury's being misled into finding guilt from the existence of the conflicting defenses alone. [*Johnson v. United States, supra* at 368 n.11 (emphasis in original).]

■ We find no merit in the contention by Diamen that the defenses presented by each appellant were so antagonistic and irreconcilable that there was a substantial risk that the jury would find guilt from that fact alone. First, we find no irreconcilable conflict in the defenses. But assuming that there was, in fact, some, it was of a de minimis degree and not likely to create an inference of guilt from that conflict. The defenses presented were substantially the same in that the appellants admitted presence at the scene but denied participation in the murder. Moreover, the government presented independent evidence of the guilt of Sousa and Eastridge by their admissions to Dorothy Willett as well as damaging physical evidence of the murder found on the appellants and in the car occupied by them. This evidence coupled with the essentially identical story by the defense and government concerning the events of the night in question—the accusations and quarrels between the two groups at the Godfather that led to the murder—belie the merit of the contentions. Under these circumstances, we find no abuse of discretion in denial of the motions for severance based on these grounds.

5. We are not unmindful that the appellations "Richter group" and "Battle group" were used to negate the prejudice which would have resulted from the use of racial designations or from group nicknames such as "The Pagans". The trial court is to be commended for its sensitivity to this issue. Unfortunately, the name utilized, in fact, contributed toward creating legal prejudice to Richter.

6. We reject appellant Diamen's contention that he was prejudiced by the testimony of Richter's offenses and thus the denial of his motion to sever constituted an abuse of discretion. This evidence, which also implicated Diamen, would have been admissible at a separate trial of Diamen to prove motive, intent, premeditation, and deliberation.

## D. *Codefendant Confessions*

Diamen claims the trial court abused its discretion in denying his Rule 14 motion for severance based on the testimony of Dorothy Willett recounting the admissions made to her by Sousa and Eastridge.

■ A codefendant's out-of-court confession or admission is not admissible in evidence against another defendant. *E.g.,* McCormick, Law of Evidence § 262, at 631 (2d ed. 1972). Since a fair trial requires that the factfinder determine the issues solely based on relevant and competent evidence as to each party, the trial court must take steps to insure that a nonconfessing codefendant is not prejudiced by testimony of a confessing codefendant's out-of-court statement. *Bruton v. United States,* 391 U.S. 123, 131 n.6, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ Rule 14 provides the trial court a panoply of tools to accomplish this task. Severance is one of them. However, in appropriate circumstances, other remedies may suffice. One such is to sanitize the confession or admission to delete all references to the nondeclarant codefendants. *E.g., Smith v. United States,* D.C.App., 312 A.2d 781, 788 (1973); *Oliver v. United States,* 118 U.S.App.D.C. 302, 305–06, 335 F.2d 724, 727–28 (1964).

■ Here the trial court chose the alternative of sanitizing rather than severing. The testimony of Willett mentioned only the admissions of Sousa and Eastridge which implicated themselves.[7] Both Sousa and Eastridge testified—and were thus subject to cross-examination by counsel for their codefendants—and denied making the statements testified to by Willett. Further, the trial court gave the jury appropriate instructions limiting consideration of these statements to the declarants. We find no error by the trial court on this issue.

## IV. SUFFICIENCY OF EVIDENCE

Appellant Richter contends that the trial court erred in denying his motions for judgment of acquittal on both counts of assault with a dangerous weapon. Specifically, Richter contends that as to the count alleging assault upon Allen, the element of criminal intent was not proved by the government beyond a reasonable doubt, and that as to the count of assault upon Battle, the evidence was generally insufficient to be submitted to the jury. We agree only with the contention as to the count alleging the assault upon Battle.

■ The test for sufficiency of evidence "is not whether a reasonable doubt was possible, but rather whether a finding of *no reasonable doubt* was possible." *United States v. Harris,* 140 U.S.App.D.C. 270, 284, 435 F.2d 74, 88 (1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971) (emphasis in original) (footnote omitted). Therefore, "[t]o sustain a conviction the evidence need be 'such evidence that reasonable persons *could* find guilt beyond a reasonable doubt. It is not a requirement that the evidence *compel,* but only that it is *capable* of or sufficient to persuade the jury to reach a verdict of guilt by the requisite standard.'" *Id.* at 284 n.41, 435 F.2d at 88 n.41, quoting *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967) (emphasis in original). We review these contentions mindful that an appellate court will not overturn a conviction on grounds of sufficiency if the evidence presented at trial reasonably permits a finding of guilt beyond a reasonable doubt. *E.g., Byrd v. United States,* D.C.App., 388 A.2d 1225, 1229 (1978). We also "review the evidence in a light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Id.; Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

---

7. We note that Willett testified as to Sousa's admission that "If it had not been for the one-way street, I would have gotten away." This statement was edited to replace the word "we" with "I". Diamen contends that since the evidence showed he too was in the car with Sousa, sanitizing was an ineffective remedy. We cannot say that this statement as sanitized, was sufficiently prejudicial to Diamen to render the denial of severance an abuse of discretion.

The assault contemplated by the District of Columbia Code is common law assault and has been defined as:

"an attempt with force or violence to do a corporal injury to another; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person. [*Guarro v. United States,* 99 U.S.App.D.C. 97, 99, 237 F.2d 578, 580 (1965), quoting *Patterson v. Pillans,* 43 App.D.C. 505, 506–07 (1915).]

 The essential elements which constitute the criminal offense of assault are:
1. That the defendant made an attempt or effort, with force or violence, to do injury to the person of another;
2. That at the time he made such an attempt or effort, he had the apparent present ability to effect such an injury; and
3. That, at the time of the commission of the assault, he intended to do the acts which constituted the assault. [Criminal Jury Instruction for the District of Columbia, No. 4.11 (3d ed. 1978).]

For the government to prove assault with a dangerous weapon, it must prove not only the foregoing three elements of assault but also that the defendant committed an assault "with a dangerous weapon." Criminal Jury Instruction for the District of Columbia, No. 4.12 (3d ed. 1978). To sustain a conviction the government must prove each and every element beyond a reasonable doubt. Thus, intent, being one of the elements of the criminal offense must likewise be proven beyond a reasonable doubt.

 However, "[s]ince the statute does not require that the weapon be used with a conscious purpose to inflict injury," *Parker v. United States,* 123 U.S.App.D.C. 343, 346, 359 F.2d 1009, 1012 (1966), the "specific intent to inflict . . . injury with the weapon is not a necessary element of assault with a dangerous weapon." *Anthony v. United States,* D.C.App., 361 A.2d 202, 206 n.5 (1976), citing *Parker v. United States, supra.* The statute concerns itself with the danger "of the instrumentality used . . . without regard to whether it was specifically intended that its use in the particular instance would issue in serious injury." *Parker v. United States, supra,* 123 U.S.App.D.C. at 347, 359 F.2d at 1013.

"It is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery that is material, but what his conduct and the attending circumstances denote at the time to the party assaulted. * * * It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace. [*Anthony v. United States, supra* at 205, quoting *Commonwealth v. Henson,* 357 Mass. 686, 259 N.E.2d 769, 773 (1970), quoting *Commonwealth v. White,* 110 Mass. 407, 409.]"

Hence, assault is a general intent crime. *Pino v. United States,* 125 U.S.App.D.C. 225, 226 n.1, 370 F.2d 247, 248 n.1 (1966), *cert. denied,* 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967). Thus, the inquiry is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Anthony v. United States, supra* at 206. Our attention is focused "upon the menacing conduct of the accused and his purposeful design either to engender fear in or do violence to his victim." *Id.*

 While the evidence against Richter of the assault with a dangerous weapon upon Allen was meager, at best, we cannot say that the evidence as a whole was so inadequate that no reasonable juror, acting reasonably, could find guilt.

 We are of a different opinion, though, concerning Richter's alleged assault upon Battle. We are in agreement with Richter that the evidence adduced at trial concerning this assault is insufficient to prove the crime charged. We find that the government failed to prove beyond a reasonable doubt that Richter made "an attempt or effort, with force or violence to do

injury to" Battle. The record shows that Richter was walking with Pamela Heims and Jones when they came into contact with Brown and Battle. Jones then threw popcorn at Battle. Brown, who had been walking with his head down, looked up momentarily to see "the whole group"—six or seven men—brandishing knives. He could not identify whether Richter was one of that group. This is not the type of case which permits a finding of individual culpability from group activity. The denial of the motion for judgment of acquittal permitted the jury to speculate as to whether Richter was part of that group and was error by the trial court.

## V.

We affirm the convictions of Sousa, Eastridge, and Diamen. We reverse the convictions of Richter. We remand to the trial court as to Richter with instructions that it enter a judgment of not guilty as to the count of the indictment alleging assault with a dangerous weapon by Richter on Battle. The United States may, if it chooses, seek a retrial of appellant Richter on the counts of assault with a dangerous weapon upon Allen and of carrying a dangerous weapon.

*Affirmed in part; reversed in part; remanded.*