**Elton G. CARPENTER, a/k/a Randy Johnson, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12044.**

District of Columbia Court of Appeals.

Argued En Banc Jan. 11, 1980.

Decided April 13, 1981.

2. *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110 (1959).

Jeffrey B. O'Toole, Washington, D. C., for appellant.

Michael W. Farrell, Asst. U. S. Atty., Washington, D. C., with whom John A. Terry, Asst. U. S. Atty., Washington, D. C., was on the Petition for Rehearing En Banc. Carl S. Rauh, U. S. Atty., Washington, D. C., while the Petition for Rehearing En Banc was pending, and Martha P. Rogers, Asst. U. S. Atty., Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER,* NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

On January 24, 1977, a jury found appellant Elton Carpenter and a codefendant guilty of second-degree burglary (two counts), D.C.Code 1973, § 22–1801, grand larceny, D.C.Code 1973, § 22–2201, and destruction of property, D.C.Code 1973, § 22–403.[1] At trial appellant did not testify but his codefendant did. The court permitted the government, through rebuttal testimony by a police officer, to impeach the codefendant with a confession which, on cross-examination, he had denied making. That hearsay confession implicated appellant. Before trial, the government had apprised the defense and the court that it would use this confession to impeach the codefendant if he took the stand and denied involvement. Appellant's counsel then moved to sever the trials on the ground that the government had "indicated that the statement of the codefendant would be introduced into evidence, and this would be prejudicial." The court denied the motion but later cautioned the jury, prior to closing argument and again before the jury retired, that the confession could be considered only against the codefendant—and only for the purpose of evaluating credibility.

Appellant raises two related issues on appeal. He contends, first, that the trial court abused its discretion in denying his motion to sever. We disagree. A motion to sever for prejudicial joinder is properly denied where, as here, excision of the prejudicial portions of the codefendant's extrajudicial statement is a feasible alternative. In the present case the attempt to sanitize the statement went awry, with the result that an inadmissible, incriminatory reference to appellant came out through the officer's testimony. Appellant's second contention—that, after the attempt at redaction went awry, the trial court committed reversible error in concluding that a limiting instruction was a sufficient corrective—is likewise rejected. We conclude that the instructions adequately ameliorated any prejudice to appellant and affirm.

## I

On April 29, 1976, at 5:44 a. m., the silent alarm system of the Peoples Drug Store at

---

* Associate Judge Gallagher concurs in the result only. Judge Gallagher was an Associate Judge *of the court* at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. The court sentenced appellant to concurrent terms of four to twelve years on each burglary count, and of one to three years on both the grand larceny and destruction of property counts.

4445 Wisconsin Avenue, N.W., signalled activity. The alarm monitor soon notified the Metropolitan Police Department; Officers Sevilla and Haworth quickly responded. As they approached the area at approximately 5:50 a. m., they observed a man in a dark coat emerge from the alley or entranceway alongside the Masonic Temple, which was adjacent to the drugstore. He proceeded along Wisconsin Avenue. The officers, slowly cruising past the entranceway, spotted two other men looking toward the street. The officers stopped the car and reversed direction. As they reached the entranceway, they saw the same two men begin to run in opposite directions. Officer Sevilla left the vehicle and pursued the maroon-jacketed man northward on foot, while Officer Haworth turned the car southward and drove after the white-jacketed individual.

Although he lost his suspect momentarily, Officer Haworth soon tracked him down, arrested and searched him, and found a ladies' wristwatch still mounted on its velvet holder. The man was later identified as Lawrence Kitching, appellant's codefendant.

Officer Sevilla lost his suspect. Nevertheless, other officers, who had learned from a police "lookout" that one suspect was still at large, soon spotted a person who matched the description running not far from the place where the second suspect had eluded Officer Sevilla. This newly seen individual fled from sight, but he was soon discovered, with the aid of police dogs, lying beneath an azalea bush in the backyard of a house. The arrestee, wearing a dusty maroon jacket, falsely identified himself as Randy Johnson. He offered the explanation that he had been waiting for a bus and had fallen asleep. Later, at the police station, Officer Sevilla identified this suspect as the man who had eluded him. Subsequent identification revealed that the suspect actually was appellant, Elton Carpenter.

While investigating the scene of the crime, police officers discovered near the stairs to the entranceway a green gym bag containing two crowbars, a screwdriver, a roll of tape, and fourteen watches and several radios. When both the Masonic Temple and drugstore proved to be locked, the police began to search for a means of entrance, ultimately discovering a hole in the roof of the Temple (which was accessible by ladder at the rear of the entranceway). Further investigation revealed a flagpole in the Temple in the area beneath the hole, as well as another hole leading from the Temple into the drugstore. There, the radio and wristwatch counter had been rifled and there was evidence the narcotics cabinet had also been disturbed. FBI agents compared debris collected from the tools and codefendant Kitching's clothing with plaster from the burglarized premises and found them quite similar. Examination of appellant's jacket, however, yielded no similar, incriminating evidence.

At trial, appellant introduced no defense evidence. Codefendant Kitching, however, testified, giving a detailed, innocent explanation of his presence in the area. On cross-examination, he denied any participation in the break-in and further denied having made an incriminating statement to the police about his and appellant's entry of the Temple.[2] In rebuttal, the government offered Officer Gaine, who had spoken with Kitching at the police station. The officer testified that Kitching had given a statement implicating both himself and appellant in the crimes.[3]

After conclusion of the government's rebuttal case, during discussion of proposed

2. [Prosecutor:] You told him about the flagpole and how Mr. Carpenter had put the flagpole over and you had shimmied down the flagpole?

       *    *    *    *    *    *

[Kitching:] No, I ain't tell him all about that.

3. [Prosecutor:] Did you then discuss with [codefendant Kitching] the facts of the burglary? [Officer Gaine:] Yes, I did.

Q What did he tell you?
A He stated that he had mentioned people had come in a car to the scene of the offense. They'd gone to the building. They had cut a hole through the roof. His codefendant had jumped from the roof into the building, and then slid a flagpole over the hole in the roof,

jury instructions with the court, appellant's counsel, apropos of his pretrial severance motion, moved unsuccessfully for a mistrial based on Officer Gaine's testimony about Kitching's confession implicating appellant. Immediately prior to closing arguments, however, the court admonished the jurors that Kitching's confession could be considered only for impeachment and only in codefendant's Kitching's case.[4] Again, in the general charge at the end of trial, the court repeated these instructions and further, referring specifically to the confession, warned the jurors to consider the evidence against each defendant separately.[5] The jurors deliberated, then convicted appellant and codefendant Kitching. After sentencing, appellant noted this appeal.

## II

■ We emphasize at the outset that one defendant's out-of-court confession is not admissible against a codefendant. Under the traditional rules of evidence, it constitutes inadmissible hearsay and has no legitimate probative force against the non-declarant codefendant. *Sousa v. United States*, D.C.App., 400 A.2d 1036, 1043 (1979); *see Bruton v. United States*, 391 U.S. 123, 128 n.3, 88 S.Ct. 1620, 1623 n.3, 20 L.Ed.2d 476 (1968); *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); *Jones v. United States*, 119 U.S.App.D.C. 284, 287–88, 342 F.2d 863, 866–67 (1964) (en banc); C. McCormick, Evidence § 262, at 631 (2d ed. 1972). As we noted in *Sousa v. United States, supra* at 1043, "a fair trial requires that the factfinder determine the issues solely based on relevant and competent evidence as to each party," and accordingly the trial court must take appropriate steps to ensure that a defendant is not prejudiced by testimony of a confessing co-

and that he and another accomplice had then slid down the flagpole. They had then chopped through the wall into the false ceiling to the Peoples Drugstore and pushed piles in there and dropped through that into the Peoples Drugstore.
Q At the time you were having this discussion with Mr. Kitching, was there another person that had also been arrested that was nearby?
A Yes, there was.
Q Who was that?
A That was at that time Randy Johnson, as I knew him, but later to be identified as Elton Carpenter.
Q Had Mr. Kitching had an opportunity to see this other person?
A Yes, he did.
Q When was that?
A When Mr. Kitching was sitting in the interview room, the door was open to the interview room when Defendant Carpenter was brought into the Detectives' Office and taken to a second interview room. The two rooms are adjacent to each other.
Q When he was brought there, did he walk by the door of the room where Mr. Kitching was seated?
A Yes, he did.
Q Was Mr. Kitching facing in that direction?
A Yes, he was.

4. THE COURT: . . .
Evidence has been introduced that the defendant confessed he committed the crime as

charged. The defendant's alleged confession is admitted into evidence solely for your consideration in evaluating his credibility as a witness. The testimony of a defendant may be discredited or impeached by showing that he has previously made statements which are inconsistent with his present testimony. The prior statement is admitted into evidence solely for your consideration in evaluating the credibility of the defendant. It is not to be considered as evidence of the defendant's guilt of the offense with which he's charged. You may not consider the alleged confession as establishing the truth of any fact contained in it, and you must not draw any inference of guilt against the defendant from his alleged confession. You may consider it only in connection with your evaluation of the credence to be given his present testimony here in court.
A voluntary confession constitutes evidence only against the defendant making it. It is not evidence against any other defendant. You must not consider it in any way in determining the credibility of any other defendant.

5. THE COURT:
Certain evidence was admitted only with respect to a particular defendant and not against any other defendant. This is referring to the confession. You may consider such testimony only with respect to the defendant against whom it was offered. You must not consider it in any way in your deliberations with respect to any other defendant.

defendant's out-of-court statement. *See Bruton v. United States, supra* at 131 n.6, 133–34, 88 S.Ct. at 1625, n.6, 1626–27; *Sousa v. United States, supra* at 1043. Furthermore, although a motion to sever is properly made pretrial, once a severance issue is presented the court has a continuing duty to take adequate measures to guard against unfair prejudice from joinder. *See Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960); *Sousa v. United States, supra* at 1041; *United States v. Leonard,* 161 U.S.App.D.C. 36, 46, 494 F.2d 955, 965 (1974); *United States v. Wilson,* 140 U.S.App.D.C. 220, 225–26, 434 F.2d 494, 499–500 (1970).

### III

▇▇ Appellant urges us to reverse his conviction on the grounds that the trial court abused its discretion under Super.Ct. Cr.R. 14 by failing to grant his motion to sever, with the result that the inadmissible, incriminating reference to appellant's involvement in the burglary was heard by the jury.[6] *See, e. g., Bittle v. United States,* D.C.App., 410 A.2d 1383, 1387 (1980); *Sousa v. United States, supra* at 1043; *Smith v. United States,* D.C.App., 312 A.2d 781, 788 (1973); *United States v. Lemonakis,* 158 U.S.App.D.C. 162, 485 F.2d 941 (1973). We find no abuse of discretion in the trial court's refusal to sever. The record reflects an attempt, whether by the court or the government, to redact the testimony regarding defendant Kitching's statement in order to eliminate any reference to appellant Carpenter.[7] Under the applicable rules and case law governing severance, where redaction is feasible, severance may properly be denied.

### A

Motions to sever for prejudicial joinder are governed by Super.Ct.Cr.R. 14, which provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants *or provide whatever other relief justice requires.* In ruling on a motion by a defendant for severance the court may order the prosecutor to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial. [Emphasis added.][8]

The broad language of Rule 14 ("whatever other relief justice requires") permits the trial court to fashion a less drastic remedy than severance, where appropriate in the circumstances. *See Sousa v. United States, supra* at 1043.[9] In *Smith v. United States,*

---

6. Appellant also contends that the admission of codefendant Kitching's statement into evidence at their joint trial denied appellant the due process of law under the Fifth Amendment. Due process requires that a defendant receive a fair trial but does not prohibit the use of limiting instructions in all cases. *See Spencer v. Texas,* 385 U.S. 554, 565, 87 S.Ct. 648, 654, 17 L.Ed.2d 606 (1967); *cf. Bassett v. Smith,* 464 F.2d 347 (5th Cir. 1972), *cert. denied,* 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190 (1973) (due process clause permits states wide latitude in framing rules of evidence and procedure). Admission of a codefendant's confession with limiting instructions, even if an error in the exercise of the court's discretion under Rule 14, would not necessarily constitute a constitutionally unfair procedure. Severance under Rule 14 has traditionally been committed to the sound discretion of the trial court. *See Sousa v. United States, supra* at 1041; *Johnson v. United States,* D.C.App., 398 A.2d 354, 367

(1979). We decline to hold that Fifth Amendment due process *per se* requires exclusion of all codefendant confessions regardless of the extent of prejudice or attempts to alleviate such prejudice.

7. Officer Gaine modified his testimony, from stating in pretrial proceedings that Kitching explicitly named Carpenter, to his trial testimony, wherein Gaine used the word "codefendant" instead. *See* note 3 *supra.*

8. *See also* D.C.Code 1973, § 23–313 (codification of Rule 14); Fed.R.Crim.P. 14 (identical in substance to Super.Ct.Cr.R. 14).

9. In *Sousa* we stated:
   Rule 14 provides the trial court a panoply of tools to accomplish this task. Severance is one of them. However, in appropriate circumstances, other remedies may suffice.

*supra*, we recognized certain guidelines for a trial court faced with a situation where "an extrajudicial statement of one defendant, which implicates his codefendant[,] is sought to be introduced." *Id.* at 788. These guidelines require that a trial judge first consider "delet[ing] from the statement all references to the nondeclarant codefendant. If this is not feasible then a severance under Super.Ct.Cr.R. 14 should be granted on motion, or with the consent, of the nondeclarant defendant." *Id.* (footnotes omitted). Deletion of incriminating references can be accomplished with a minimum of effort[10] and has the concomitant results of preserving the advantages of judicial economy inherent in a joint trial while eliminating unnecessary and unfair prejudice to the codefendant. Implicit in *Smith* is a third alternative, that where redaction is impracticable, the government may instead choose to forego introduction of the statement as an alternative to severance.

■ In *Smith* itself reversal was constitutionally required because the declarant codefendant did not take the stand, violating the nondeclarant codefendant's Sixth Amendment right to confront the witnesses against him. *Bruton v. United States, supra.* Nevertheless, the guidelines set out in *Smith* apply with equal force in "non-*Bruton*" situations—where the declarant codefendant takes the stand no confrontation clause problem is presented. Rule 14 requires that the trial court take appropriate steps to minimize the prejudice inherent in codefendant confessions which are inadmissible against the nondeclarant defendant.

### B

■ There is, traditionally, a presumption in favor of joinder, *see* Super.Ct.

Cr.R. 8(b), because joint trials "do conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *Bruton v. United States, supra,* at 134, 88 S.Ct. at 1626; *see Johnson v. United States, supra* at 367; *Baxter v. United States,* D.C.App., 352 A.2d 383, 385 (1976); *United States v. Robinson,* 139 U.S.App. D.C. 286, 289, 432 F.2d 1348, 1351 (1970). As we have often stated, the trial court, in exercising its discretion to sever, "must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." *Drew v. United States,* 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (1964); *accord, Bittle v. United States, supra* at 1386; *Johnson v. United States, supra* at 367–68; *Samuels v. United States,* D.C.App., 385 A.2d 16, 18 (1978); *Williams v. United States,* D.C.App., 263 A.2d 659, 662 (1970); *see* C. Wright, 1 Federal Practice and Procedure § 223, at 441 (1969). In this balance some amount of prejudice will be permitted in favor of judicial economy and the concomitant expedition of cases. *See, e. g., United States v. Gambrill,* 146 U.S.App.D.C. 72, 83, 449 F.2d 1148, 1159 (1971) (some disparity in amount of evidence against codefendants allowed; only if there is gross disparity is severance required); *Rhone v. United States,* 125 U.S. App.D.C. 47, 48, 365 F.2d 980, 981 (1966) (some conflict in defenses, less than such antagonism that jury will infer guilt from the conflict alone, allowed).

In weighing the prejudice to the defendant against the advantages of judicial economy, the trial court must look to the alleged "category of prejudice," *Williams v. United States,* D.C.App., 382 A.2d 1, 8 (1978). In this context, some types of evidence have

---

One such is to sanitize the confession or admission to delete all references to the nondeclarant codefendants. [*Sousa v. United States, supra* at 1043 (citing *Smith v. United States, supra* at 788, and *Oliver v. United States,* 118 U.S.App.D.C. 302, 305–06, 335 F.2d 724, 727–28 (1964)).]

**10.** Although deletion of prejudicial references will often be easier in written statements or in

tape recordings, *see, e. g., Lemonakis v. United States, supra* at 170, 485 F.2d at 949, an oral statement may also be sanitized. *See, e. g., Sousa v. United States, supra* at 1043. Rule 14 specifically provides for examination of statements or confessions by the trial court in camera, although in many cases, as in this one, it will be presented to the court in a pretrial suppression hearing.

been held to be inherently prejudicial, such as evidence of other crimes. *See Drew v. United States, supra* at 15–17, 331 F.2d at 89–91 (other crimes evidence is presumed prejudicial unless evidence of two joined offenses is "simple and distinct"). *See also Tinsley v. United States,* D.C.App., 368 A.2d 531 (1976).

■ In *Bruton v. United States, supra,* the Supreme Court recognized that the out-of-court statement of a codefendant which implicates a nonconfessing defendant is likewise inherently prejudicial. Confessions and admissions that are "powerfully incriminating" present an especially great risk that limiting instructions will not be followed at potentially great prejudice to the non-confessing codefendant. 391 U.S. at 135–36, 88 S.Ct. at 1627–28. .The Court held that where the incriminating references were not deleted and the declarant codefendant did not take the stand, limiting instructions were an insufficient alternative and severance was mandated by the confrontation clause of the Sixth Amendment. The Court further explicated the *Bruton* holding in *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), where it held that when the declarant codefendant takes the stand and is available for cross-examination, the confrontation clause is not violated. Both the *Bruton* and *Nelson* holdings were based on the Sixth Amendment right to confrontation and did not address the additional question whether the trial court abused its discretion in ruling on a motion to sever for prejudicial joinder.[11] The Court has emphasized that the confrontation clause is not to be equated with the rules of evidence, *Dutton v. Evans,* 400 U.S. 74, 81–82, 91 S.Ct. 210, 215–16, 27 L.Ed.2d

213 (1970); *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970). *See also Harrison v. United States,* D.C.App., 407 A.2d 683, 686 (1979); *United States v. Lemonakis, supra* at 170, 485 F.2d at 949; *United States v. Leonard, supra* at 62, 494 F.2d at 981 (Bazelon, C. J., concurring in part and dissenting in part). Just as plainly, the opportunity to cross-examine does not operate to make the incriminating extrajudicial statement admissible against the nondeclarant codefendant. *United States v. Leonard, supra* at 62–63, 494 F.2d at 981–82 (Bazelon, C. J., concurring in part and dissenting in part); *People v. Brown,* 79 Cal.App.3d 648, 656–57, 145 Cal.Rptr. 130, 134 (1978). Perforce, satisfaction of a defendant's Sixth Amendment right to confrontation under the *Bruton-Nelson* standard does not terminate the trial judge's continuing duty to take adequate steps to reduce or eliminate any prejudice arising from joinder.

C

The highest courts of several states, as well as a number of federal courts, have announced standards, similar to those we adopted in *Smith,* to govern cases in which the prosecution proposes to introduce evidence of an out-of-court statement by one defendant that implicates a codefendant. In California, for example, the Supreme Court held under its rules of practice applicable to severance that the trial court can permit a joint trial only "if all parts of the extrajudicial statements implicating any co-defendants can be and are effectively deleted without prejudice to the declarant;" otherwise, if the prosecution is to use the statement against the defendant who made it,

11. The holding in *Nelson v. O'Neil, supra* at 629–30, 91 S.Ct. at 1727–28, was explicitly narrow: "[T]he defendant has been denied no *rights protected by the Sixth and Fourteenth Amendments.*" In *Bruton* the appellant never made a motion to sever, *Evans v. United States,* 375 F.2d 355, 361 (8th Cir. 1967), *rev'd sub nom. Bruton v. United States, supra,* so neither the trial nor appellate courts addressed a Rule 14 severance question.

The Court's recent opinion in *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d

713 (1979), reaffirmed *Nelson v. O'Neil* and held that where the "interlocking" confessions of each of two codefendants are introduced, the confrontation clause is not violated although neither codefendant takes the stand. A plurality of four Justices adopted a *per se* rule with regard to "interlocking" confessions, *id.* at 69–76, 99 S.Ct. at 2137–2141, while a fifth Justice concurred in the judgment on a harmless error analysis, *id.* at 77–81, 99 S.Ct. at 2141–2143 (Blackmun, J., concurring).

there must be separate trials. *People v. Aranda*, 63 Cal.2d 518, 530–31, 407 P.2d 265, 272–73, 47 Cal.Rptr. 353, 360–61 (1965) (Traynor, C. J.); *accord, People v. Brown, supra* at 657, 145 Cal.Rptr. at 134; *People v. Barbaro*, 395 Ill. 264, 270, 69 N.E.2d 692, 695 (1946); *State v. Rosen*, 151 Ohio St. 339, 342, 86 N.E.2d 24, 26 (1949); *see United States v. Cleveland*, 590 F.2d 24, 28 (1st Cir. 1978); *United States v. Grant*, 549 F.2d 942, 948 (4th Cir. 1977); *United States v. Truslow*, 530 F.2d 257, 261–62 & n.3 (4th Cir. 1975); *United States v. Johnson*, 478 F.2d 1129 (5th Cir. 1973); *Schaffer v. United States*, 221 F.2d 17, 19 (5th Cir. 1955); *Reed v. People*, 174 Colo. 43, 49, 482 P.2d 110, 113 (1971); *State v. Fullen*, 7 Wash.App. 369, 499 P.2d 893 (1972), *cert. denied*, 411 U.S. 985, 93 S.Ct. 2282, 36 L.Ed.2d 962 (1973).[12]

Indeed, and perhaps more importantly, redaction of a defendant's admissions which implicate a codefendant has been required by the United States Court of Appeals for the District of Columbia Circuit in cases that have precedential weight for this court. *See M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971). In *Oliver v. United States*, 118 U.S.App.D.C. 302, 335 F.2d 724 (1964), a case preceding the Supreme Court's opinion in *Bruton v. United States, supra*, the court in a "non-*Bruton*" situation applied the rule of *Kramer v. United States*, 115 U.S. App.D.C. 50, 317 F.2d 114 (1963) (a *"Bruton*-type" case, although also decided before *Bruton* ), which states that references to a nondeclarant codefendant must be deleted or a motion for severance granted. In *Sims v. United States*, 132 U.S.App.D.C. 111, 113, 405 F.2d 1381, 1383 (1968), the court in a brief per curiam opinion held that severance was required where multiple instances of hearsay were admitted subject to instructions limiting admissibility to each re-

spective declarant codefendant. The *Sims* court regarded the error as a Rule 14 severance question, not a confrontation clause problem, and applied *Bruton* and *Kramer* without indicating whether the several declarants had testified. *See also Jones v. United States, supra* at 287–88, 342 F.2d at 866–67 (ineffective redaction of statements which are inadmissible against nondeclarant codefendants requires reversal). Nothing subsequent to *Oliver, Kramer,* and *Sims* suggests that the rule applied in those cases should be abandoned or modified. Indeed, *Sims* was cited as authority by this court in *Smith v. United States, supra* at 788, and we cited *Oliver*, along with *Smith*, as authority in *Sousa v. United States, supra* at 1043, *see note 9 supra.*

The guidelines adopted in *Smith* and approved in *Sousa* for "non-*Bruton* " situations, 400 A.2d at 1043, allow redaction of a statement in lieu of severance. A third alternative, exclusion, can be added to the *Smith* guidelines. The government may decide to forego any use of the statement, thereby eliminating any prejudice and avoiding a need for severance. *See People v. Aranda, supra* at 530–31, 407 P.2d at 272–73, 47 Cal.Rptr. at 360–61. These three alternatives—redaction, exclusion, or severance—comprise the proper standard for use in most cases [13] under Rule 14 when the court is presented with a motion for severance based on a codefendant's confession, whether or not the codefendant takes the stand and testifies. *See Sousa v. United States, supra* at 1043; *Smith v. United States, supra* at 788. *See also People v. Aranda, supra; Reed v. People, supra; People v. Barbaro, supra; State v. Rosen, supra; State v. Fullen, supra;* ABA Project on Minimum Standards for Criminal Jus-

---

**12.** After *Nelson v. O'Neil, supra*, the California Supreme Court decided two cases solely on the basis of a *Bruton-Nelson* Sixth Amendment analysis, without expressly dealing with *Aranda's* reliance on the state severance rules. *See People v. Steger*, 16 Cal.3d 539, 551, 546 P.2d 665, 672–73, 128 Cal.Rptr. 161, 168–69 (1976); *In re Rosoto*, 10 Cal.3d 939, 951–52, 519 P.2d 1065, 1073, 112 Cal.Rptr. 641, 649, *cert. denied*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141

(1974). A California Court of Appeals, however, has recently reaffirmed *Aranda*, emphasizing that the principles set forth in *Aranda*, "are to be regarded, not as constitutionally compelled, but as judicially declared rules of practice . . . ." *People v. Brown, supra* at 656, 145 Cal.Rptr. at 134 (quoting *Aranda, supra* at 530, 407 P.2d at 272, 47 Cal.Rptr. at 360).

**13.** *But see* text accompanying note 15 *infra.*

tice, Standards Relating to Joinder and Severance § 2.3(a) (Approved Draft, 1968).[14]

We need not, however, adopt the *per se* rule of *Aranda, Barbaro* and *Rosen* that limiting instructions may never suffice to eliminate prejudice from a confessing codefendant's hearsay statement. Indeed, in *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), a plurality of the Court had opportunity to reiterate the maxim that "[a] crucial assumption underlying [the jury] system is that juries will follow the instructions given them by the trial judge." *Id.* at 73. Nevertheless, the trial court is under a duty to minimize potential prejudice to a codefendant. The admission of those portions of a codefendant's statement that contain inadmissible, incriminating references to a nonconfessing defendant is properly disfavored, *see Sousa v. United States, supra* at 1043. Thus, whenever such portions may be effectively deleted and the statement thus "sanitized," that is the proper course for the trial court to follow. As government counsel in this case has conceded, with commendable candor, "[t]he government has no legitimate interest in smuggling before the jury evidence which is inadmissible." Yet, in a certain, limited class of cases, where the references to the nonconfessing defendant are so intertwined within the confessing defendant's statement that redaction is impracticable[15] and the references are not significantly incriminating, it may be appropriate for the trial court, after weighing the alternatives, and recognizing the desirability of excluding inadmissible evidence, to admit the statement with limiting instructions.

### D

In the instant case, the trial judge properly denied the appellant's pretrial motion to sever. The record indicates that an attempt at redaction was made instead. Redaction was proper in this case because it could be easily achieved by substituting "accomplice" or some other neutral term in lieu of a direct reference to Carpenter by name (or as "codefendant") in Officer Gaine's testimony regarding Kitching's statement. The use of the term "accomplice" would be neutral since the fact that the burglary was carried out by several persons was already established by the evidence. The mere corroboration of this fact by Kitching's confession cannot be deemed prejudicial to appellant. *See State v. Herd*, 14 Wash.App. 959, 546 P.2d 1222 (1976).

### IV

Despite the attempt at redaction, an incriminating reference to Carpenter's participation in the burglary was included in Officer Gaine's testimony. Appellant

---

**14.** ABA Standard § 2.3(a) provides:
2.3 Severance of defendants.
(a) When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court should determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court should require the prosecuting attorney to elect one of the following courses:
(i) a joint trial at which the statement is not admitted into evidence;
(ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the confession will not prejudice the moving defendant; or
· (iii) severance of the moving defendant.

**15.** To effectively safeguard a codefendant's right to severance for prejudicial joinder, redaction must effectively eliminate from the out-of-court statement all references to the nondeclarant codefendant. This includes references which, when placed in conjunction with the redacted statement, make it clear the deleted portions or names refer to the codefendant. *See Parker v. Randolph, supra* at 67 n.3, 99 S.Ct. at 2136 n.3 (substitution of "blank" or "another person" nevertheless left "no possible doubt in the jurors' minds concerning the 'person[s]' referred to" (citation omitted); *United States v. Danzey*, 594 F.2d 905 (2d Cir. 1979) (substituting "blank" for codefendant's name ineffective in eliminating prejudice); *Jones v. United States, supra* at 287, 342 F.2d at 866; Dawson, *Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices*, 77 Mich.L.Rev. 1379, 1413–15 (1979) (excisions may call attention to fact that statement implicates other persons).

contends that even if his motion to sever was properly denied, this single reference, despite limiting instructions, requires reversal. At the point where redaction goes awry, the trial court must determine whether cautionary instructions will be a sufficient corrective or a mistrial must be declared. After considering the nature of the reference, the scope of the limiting instructions, and the other evidence in the case, we hold that the cautionary instructions were sufficient to ameliorate any prejudice from the inadmissible, incriminating reference to appellant Carpenter.

Where statements are oral, the trial court may take appropriate steps to delete prejudicial references, yet there still exists the possibility of inadvertent slips that could potentially prejudice the codefendant. Nevertheless, the possibility of inadmissible testimony being uttered inadvertently in front of the jury is a constant but acceptable risk inherent in all oral testimony. As the Court noted in *Bruton v. United States, supra*:

> Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." [*Id.* at 135, 88 S.Ct. at 1627 (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953) ).]

**16.** The government contends that the trial court may rely on the existence of "substantial independent evidence," (quoting *Borrero v. United States*, D.C.App., 332 A.2d 363, 366 (1975) (application of harmless error standard) ) to justify the admission of an unredacted confession subject to limiting instructions. While the existence of other evidence may be considered in determining whether limiting instructions are sufficient where redaction goes awry, the trial court will generally not be apprised of the nature of the quality and quantity of the evidence at the time when a severance motion is made. In addition, the existence of other evidence *is* no basis for avoiding the exercise of the trial court's discretion. *See* Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale L.J. 553, 556 (1965):

*See United States v. Chee,* 422 F.2d 52, 54 (9th Cir. 1970) (witness stopped in mid-sentence to prevent inadmissible testimony of prior bad act); *cf. Scott v. United States,* D.C.App., 412 A.2d 364, 370–71 (1980) (possibility of jury contamination from witness' remarks during bench conference).

▮ When inadmissible evidence has come before a jury, the grant or denial of a motion for mistrial is committed to the sound discretion of the trial court. *Rink v. United States,* D.C.App., 388 A.2d 52, 58 (1978) (improper prosecutorial question); *Hammond v. United States,* D.C.App., 345 A.2d 140, 141 (1975) (courtroom outburst); *cf. Evans v. United States,* D.C.App., 392 A.2d 1015, 1026 n.15 (1978) (unauthorized and unrelated evidence introduced into jury room). The trial court did not err in giving limiting instructions in lieu of granting a mistrial. The reference to Carpenter in Officer Gaine's testimony was a direct but limited one. The trial court gave two sets of limiting instructions, one set after the rebuttal testimony and a second set as part of the general charge to the jury. In addition, the trial court could properly consider the nature of the quality and quantity of the evidence against Carpenter in determining whether limiting instructions would be a sufficient corrective.[16]

The government's evidence established that minutes after the silent alarm was triggered, appellant was spotted wearing a maroon jacket and crouched by the en-

> The function of [Rule 14] is to avoid prejudice before the fact by segmenting trials; the question presented by the rule is that of the proper guides and standards for exercise of trial court discretion when the defendant has moved for relief from prejudicial joinder.... [A]fter the fact determinations of whether the failure to grant the proper relief has been cured ... fail to identify the cause of prejudice and[,] since they do not specify the situations in which single trials should be granted in order to prevent prejudice, they provide the trial courts with no meaningful standards to guide their exercise of discretion under Rule 14.

*See generally* Decker, *Joinder and Severance in Federal Criminal Cases: An Examination of Judicial Interpretation of the Federal Rules,* 53 Notre Dame Law. 147, 169 (1977).

tranceway to an alley adjacent to the burgled drugstore. He was seen running from the alley and was pursued, eluding capture by additional police officers for only a few minutes. The officers found appellant hiding under an azalea bush in the back yard of a house. He gave a false identification and an inherently incredible explanation of his presence under the bush. At the entranceway to the alley from which he had fled was found a gym bag containing goods stolen from the drugstore and tools used to break into the store. In view of this evidence, the limited nature of the inadmissible incriminating reference, and the two sets of limiting instructions, we find that the trial court did not err in denying the motion for a mistrial.

*Affirmed.*

KERN, Associate Judge, with whom Associate Judges NEBEKER and HARRIS join, concurring:

A jury convicted appellant and Lawrence Kitching, his codefendant, of second-degree burglary and related offenses arising out of the nighttime breaking into and entering of a drug store.[1]

At trial, the codefendant Kitching testified in his own defense with an assertion of innocent presence at the scene of the crime. The prosecution then presented a rebuttal witness to impeach him: the police officer who had questioned Kitching immediately after his arrest. The officer testified as to an incriminatory statement Kitching had made and the trial court gave to the jury the standard cautionary instruction that the jurors were to "consider it [the statement] only in connection with your evaluation of the credence to be given his [Kitching's] present testimony here in court." The court further cautioned the jury that "you must not draw any inference of guilt against the defendant [Kitching] from his

alleged confession." A similar cautionary instruction was repeated to the jury in the court's final charge.

The police officer, while testifying on rebuttal as to what Kitching had told him at the stationhouse, failed to omit from his recount to the jury of Kitching's statement a reference to appellant. Specifically, the officer testified:

He [the codefendant Kitching] stated that he had mentioned people had come in a car to the scene of the offense. They'd gone to the building. They had cut a hole through the roof. *His codefendant* had jumped from the roof into the building, and then slid a flagpole over the hole in the roof, and that he and another accomplice had then slid down the flagpole. They had then chopped through the wall into the false ceiling to the Peoples Drugstore and pushed piles in there and dropped through that into the Peoples Drugstore. [Emphasis added.]

Appellant moved for a mistrial, incorrectly relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the confessing codefendant did not testify. The trial court denied the motion, concluding that the problem adequately could be solved by instructing the jury then and again in its final charge that Kitching's statement was to be considered *only* with respect to him and not "in any way in your deliberations with respect to any other defendant."

A division of this court consisting of Judges Kelly, Harris, and Ferren heard the appeal. A majority—Judges Kelly and Ferren, with Judge Harris dissenting—voted to reverse appellant's conviction. The majority seized upon the fact that the trial court had denied a pretrial motion by appellant to sever his case from that of his codefendant Kitching[2] and proceeded in its opinion, later vacated by the entire court, to adopt for

---

1. The store's silent burglar alarm was triggered by the break-in. When police promptly responded they saw two men run from an alley adjacent to the store. They recovered on the scene a bag containing burglary tools. Of the two defendants, one was quickly arrested near-

by and the other was found shortly thereafter, hiding under some shrubbery.

2. Appellant apparently feared the "rub-off" prejudice to his case should Kitching testify and his incriminatory statement then be introduced by the government.

this jurisdiction a new rule. The rule sought to be adopted was that whenever a defendant, prior to trial, moves for a severance "because an out of court statement of a codefendant makes reference to him but is not admissible against him" the trial court *must* require the prosecutor to follow one of three courses: (1) to proceed with the joint trial without using the statement, or (2) to proceed with the joint trial and delete all reference contained in the statement to the defendant moving for severance, or (3) to sever for a separate trial the movant's case.

The majority further concluded that if a trial court failed to require the prosecutor to follow this course, such failure would constitute error which could *not* be considered harmless unless there was substantial independent evidence of guilt. In reversing the conviction, the majority of the division was not persuaded there was substantial independent evidence of guilt here despite what I consider to be extremely strong evidence introduced by the government.

At the en banc stage of the proceeding, Judges Kelly and Ferren vote to affirm the convictions, although Judge Ferren's "concurring" opinion (like the dissenting opinion of Judge Mack) reflects that those three judges still would prefer to have a virtual per se reversible error rule in a situation of this type.[3]

We face what ultimately is seen to be a rather narrow issue in this case.[4] The question is: Given the rebuttal witness' glancing and undoubtedly inadvertent one-word reference to appellant as he recounted to the jury Kitching's prior incriminatory statement, coupled with the very strong evidence adduced against appellant, did the trial judge abuse his discretion in denying the motion for a mistrial and concluding that cautionary instructions would adequately protect appellant's rights?[5] I readily conclude that he did not. No extreme circumstances are present here.[6] Beyond that, it is well settled that juries are presumed to follow their instructions from the trial judge. *Parker v. Randolph*, 442 U.S. 62, 72, 99 S.Ct. at 2138 (1979).[7]

With respect to the preference of Judge Ferren and Judge Mack, as expressed in their opinions, for a virtual per se reversible error rule (notwithstanding authority such as *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 662 (1969), which

**3.** Judge Ferren, joined by Judge Kelly, appears to prefer following *People v. Aranda*, 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 (1965), and its progeny rather than the relevant Supreme Court precedents, which I consider controlling.

**4.** Chief Judge Newman's opinion ranges somewhat afield, discussing, *inter alia*, the subject of joinder, which is not and never has been an issue.

**5.** We note also that the prosecutor made no reference in her jury arguments to this minimal reference to appellant.

**6.** In *Bruton v. United States*, 391 U.S. 123, 135–36, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968), in which the confessing codefendant did *not* take the stand, the Supreme Court stated: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great ... that the practical and human limitations of the jury system cannot be ignored. Such a context is ... where the powerfully incriminating extrajudicial statements of a codefendant ... are deliberately spread before the jury in a joint trial [and] ... [t]he unreliability of such evidence is intolerably compounded when the alleged accomplice [the codefendant] ... does not testify and cannot be tested by cross-examination." *Cf. Smith v. United States*, D.C.App., 312 A.2d 781 (1973).

The Supreme Court has made it clear that the basic constitutional principle of *Bruton* does not apply when, as occurred here, the confessing codefendant takes the stand. *Nelson v. O'Neil*, 402 U.S. 622 (1971); *see also Borrero v. United States*, D.C.App., 332 A.2d 363 (1975). Thus, while Chief Judge Newman's opinion somewhat blurs the distinction between *Bruton* and non-*Bruton* type cases, there remains a significant difference between the two.

**7.** In *Parker v. Randolph* (which was a *Bruton*-type case), in reliance upon *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Court made a statement which is applicable a fortiori to this case:

And an instruction directing the jury to consider a codefendant's extrajudicial statement only against its source has been found sufficient to avoid offending the confrontation right of the implicated defendant in numerous decisions of this Court. [442 U.S. at 73–74, 99 S.Ct. at 2139 (footnote omitted).]

rejected a per se rule even in a *Bruton*-type of case), I call attention to this jurisdiction's codification of the harmless error rule.[8] Section 11–721(e) of the District of Columbia Code provides:

> On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

*See also Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Accordingly, in my opinion we clearly are bound to affirm appellant's convictions.

FERREN, Associate Judge, with whom KELLY, Associate Judge, joins, concurring:

After rehearing and further consideration, I concur in the judgment affirming Carpenter's conviction.

## I.

Chief Judge NEWMAN's opinion states that when the court, in a joint trial, is confronted by hearsay evidence of a codefendant's confession which also implicates a nonconfessing defendant, the court has three principal ways to protect the latter defendant: severance of the trials; redaction of the inadmissible portion of the statement; or, when redaction is impractical, continuation of a joint trial from which the hearsay statement is excluded altogether.

To these three, the court adds a fourth: [I]n a certain, limited class of cases, where the references to the nonconfessing defendant are so intertwined within the confessing defendant's statement that redaction is impracticable and the references are not significantly incriminating, it may be appropriate for the trial court, after weighing the alternatives, and recognizing the desirability of excluding inadmissible evidence, to admit the statement with limiting instructions. [*Ante* at 505 (footnote omitted).]

I cannot agree with that proposition. A codefendant's confession implicating a nonconfessing defendant in any respect is inherently prejudicial. I would limit the court's Rule 14 authority (to "grant a severance of defendants or provide whatever other relief justice requires") to the first three options.[1] *See People v. Aranda*, 63 Cal.3d 518, 530–35, 407 P.2d 265, 272–73, 47 Cal.Rptr. 353, 360–61 (1965) (Traynor, C. J.) (endorsed by the American Bar Association in its Standards for Criminal Justice, Joinder and Severance § 2.3(a) (Approved Draft 1968) quoted *ante* at 505 n.14).

Ideally, redaction is the answer; it preserves both the joint trial and properly limited use of the hearsay. If redaction is impractical in a particular case, however, I perceive no reason to invite the trial court, through the fourth option, to compromise the traditional rule against hearsay testimony. There is too great a risk that that option will be used in joint trials to justify admission of damaging hearsay that unquestionably would be excluded as against a nonconfessing defendant if the government had to elect between separate trials and exclusion of the hearsay at a joint trial. Inclusion of the fourth option puts too high a premium on joint trials and too great a confidence in the jury's ability to follow unfollowable limiting instructions. I agree with Chief Judge Traynor:

> [A jury] cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A. [*Aranda, supra*, at 529, 407 P.2d at 272, 47 Cal.Rptr. at 360.]

---

8. *See also Michigan v. Tucker*, 417 U.S. 433, 446, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974), in which the Court stated that "the law does not require that a defendant receive a perfect trial, only a fair one."

1. Chief Judge NEWMAN and Judge PRYOR would adopt a four-option test; Judges KELLY, MACK, and I perceive three options. Judge KELLY and I, however, have formally joined in Chief Judge NEWMAN's opinion to assure that a majority of the court will be understood clearly to prefer that analysis over one in which the trial court is allowed to make freer use of curative instructions in this context.

## II.

It is important to note that Chief Judge NEWMAN does not justify the trial court's approach in this case by reference to the fourth option. Instead, he perceives this to be a case of attempted redaction that "went awry"—an inadvertent reference by Officer Gaine to Kitching's "codefendant" (appellant Carpenter).

The record is not so clear to me that this is a case of attempted redaction. Although that interpretation is plausible,[2] there is some indication that the trial court denied Carpenter's motion for severance, knowing that the government later might seek to introduce "unsanitized" hearsay. *See* Tr. 60–61. If the court did knowingly permit the hearsay, intending to protect Carpenter only with the limiting instructions—*i. e.*, if the trial court did, in effect, elect the fourth option—I would hold that to be error. Until virtually all (if not all) the evidence has been presented, the trial court cannot reasonably have confidence that the jury will find an unredacted hearsay confession to be "not significantly incriminating."[3] *Ante* at 505. At best, the trial court can play a hunch that a reviewing court, in examining the entire record, will conclude that any error in admitting the unredacted statement turned out to be harmless.

Chief Judge NEWMAN's opinion appears to acknowledge this concern. *See ante* at 506 n.16. Thus, I find his opinion contradictory in creating the fourth option, which permits the trial court to speculate about such inherently inadmissible evidence. With that said, I would agree—after

rehearing and further review—that if the trial court knowingly permitted the inadmissible hearsay, any error here was harmless under *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

If, however, Chief Judge NEWMAN is correct in concluding that this is a case of redaction gone "awry," I agree that the court did not err—did not abuse its discretion—in failing to declare a mistrial, given the evidence of record (an analysis akin to the harmless error approach under *Kotteakos, supra*). When the trial court does require redaction and the government's witness, for any reason, fails to comply, the court itself cannot be said to have erred when the statement comes into evidence. The question, rather, becomes whether the court erred in denying a mistrial at that point—an inquiry into abuse of discretion requiring the same type of appellate analysis, in this context, that would be given if the court affirmatively permitted the hearsay into the trial and this court had to review for harmless error.[4]

Accordingly, whether the trial court errs in permitting unredacted hearsay testimony or a government witness fails to comply with a redaction order, there may be no reason for the reviewing court to reverse the conviction of a nonconfessing defendant (such as Carpenter) if it turns out, on the basis of the entire record, that the trial court's error or the witness' slipup was not prejudicial.

## III.

In summary, I believe the trial court only should permit a codefendant's hearsay con-

---

**2.** Redaction in this case was a practical alternative. If Officer Gaine had used the word "accomplice" instead of "codefendant," redaction would have been accomplished without necessarily tipping off the jury that Kitching (through Gaine's testimony) had directly implicated Carpenter.

**3.** *Cf. Lewis v. United States*, D.C.App., 408 A.2d 303, 307 (1979), *modifying* 393 A.2d 109, 115 (1978) (impeachable convictions of government witness must be produced automatically as *Brady* material, upon defense request at trial, without analysis of probable materiality; "there can be no objective, ad hoc way to

evaluate before trial whether an impeachable conviction of a particular government witness will be material to the outcome. No one has that gift of prophecy").

**4.** The reviewing court, however, will give greater deference to the trial court's own judgment not to declare a mistrial—in contrast with the reviewing court's independent review of the record—to the extent that the trial court bases its determination on evidence already admitted at a trial substantially in progress. *Cf. United States v. Agurs*, 427 U.S. 97, 114, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).

fession into evidence at a joint trial if it can be purged of references implicating a non-confessing defendant. Otherwise, there should be severance or exclusion; admission of the unsanitized statement, with limiting instructions, will not preserve the integrity of the trial. Consistent with this approach, if the trial court mistakenly permits the statement into evidence, harmless error analysis is always available. Similarly, if attempted redaction goes "awry," it is open to a reviewing court to find no error—no abuse of discretion—in the trial court's refusal to grant a mistrial.

MACK, Associate Judge, concurring in part and dissenting in part:

I would reverse the conviction.

In dissenting from the result reached by the majority, I should say that I applaud the guidance given by Chief Judge Newman for the majority. In today's complex society where joinder of defendants for trial is not only favored but necessary (*see Sousa v. United States,* D.C.App., 400 A.2d 1036, *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979)), it is important that judicial guidelines be firmly established for guarding against errors that can surface to the detriment of the individual and the government. I therefore concur in the majority opinion to the extent that it establishes three alternative options.[1] I think, however, that the majority, in its preoccupation with principles, has forgotten the facts.

Thus, although there may be a fair inference that this case involves redaction of a confession gone awry, there also may be a fair inference that it does not. Certainly, the record reveals no discussion relative to sanitization; the government made no representation that it would follow the redaction route and the court made no cautionary instruction or gave no order with respect

thereto. Rather the prosecutor repeatedly observed that it was the *Bruton*[2] problem that gave rise to concern; the government would avoid this problem by using the confession only for impeaching purposes should the codefendant Kitching take the stand. Nothing was said at this point about deleting Mr. Carpenter's name.

Moreover, the prosecutor, in cross-examining the codefendant Kitching about the confession, specifically named Mr. Carpenter. At a time when the evidence had established that a flagpole had been used as a method of entry through the roof, government counsel asked:

Q. You told him [the officer] ·about the flagpole and how *Mr. Carpenter* had put the flagpole over and you had shimmied down the flagpole? [Emphasis added.]

It was only a few minutes later that the prosecutor called the officer in rebuttal testimony, establishing that Kitching had indeed told him that "[h]is co-defendant had jumped from the roof into the building and then slid a flagpole over the hole in the roof, and that he and another accomplice had then slid down the flagpole."

I do not recount this sequence to suggest a deliberate tactic. In my view, the question of whether we have redaction "gone awry" or of whether the officer's remark was an inadvertent reference is irrelevant to the decision of whether Mr. Carpenter has been prejudiced because the jury has heard inadmissible evidence. Moreover, if the existence of redaction "gone awry" does make a difference, I could not follow the majority to its ultimate conclusion. Granted the truism that "the possibility of inadmissible testimony being uttered inadvertently in front of the jury is a constant but acceptable risk inherent in all oral testimony," (majority opinion *supra* at pp. 505–506) that risk should not fall on the de-

---

1. My approval of the guidelines suggested by the majority is of course limited to the three protective alternatives of redaction, severance, or exclusion—a limitation adopted by Judge Ferren in his concurring opinion.

2. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), holding that a defendant had been denied a Sixth Amendment right to confrontation where he had been incriminated by the introduction of an inadmissible confession of a codefendant who did not take the stand.

fendant here. Mr. Carpenter in moving for severance did all that he could do. His motion was denied. The government, in choosing redaction as opposed to exclusion of an inherently prejudicial statement, should bear the risk of something going awry.

I do suggest, in recounting the above sequence, that the prosecutor's question coupled with the testimony of the rebuttal witness constituted more than a single glancing reference that could not have had an impact on the jury. To this extent, at least, able government counsel on en banc consideration appears to have agreed with me; at oral argument counsel candidly acknowledged that it was driven home to the jury that Carpenter was the codefendant. Counsel argued, however, that the existence of substantial independent evidence and the instruction by the court dissipated any impact.

It is at the point of this latter argument that I part firmly with my colleagues. Although the introduction here of unreliable hearsay was not intolerably compounded by the inability to cross-examine as in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)[3] the extra-judicial statement of the codefendant Kitching was as "powerfully incriminating" as that considered in *Bruton*. This is so because Kitching's statement provided the *only* evidence that appellant was present in the burglarized building or had participated in the break-in. The other evidence was that appellant was seen running from an alley adjacent to the building and that he gave a false identification and offered a not-too-well-received explanation when found lying under an azalea bush. While the latter is competent evidence it is hardly "substantial independent evidence" to support conviction for breaking and entering a building with intent to commit a crime therein. Particularly is this true in view of the fact that no implements of crime or proceeds from the burglary were found on appellant's person; his clothing, unlike that of Kitching, bore no trace of plaster from the burglarized building.

I therefore think there was prosecutorial error (if inadvertent) in placing before the jury the hearsay confession. In my view, the error could not have been harmless: I cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

My conviction remains unshaken by the fact that cautionary instructions were given here. There is something fundamentally abhorrent in the idea that an accused may be convicted on the basis of an out-of-court hearsay confession of a codefendant. As a practical matter, in such circumstances, just as in *Bruton*,[4] there is a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining . . . guilt." *Bruton v. United States, supra*, at 126, 88 S.Ct. at 1622. " '[T]oo often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors.' " *Bruton v. United States*,[5] *supra* at 129, 88 S.Ct. at

---

**3.** Understandably appellant's counsel would hardly seek to cross-examine the codefendant about an inculpatory statement the latter denied making.

**4.** The author of the *Bruton* opinion (Mr. Justice Brennan) reads that opinion as having a second prong—that since instructing juries not to use one defendant's admissions against the other could not, in fact, prevent them from making such a use, the Sixth Amendment requires reversal. *See Nelson v. O'Neil*, 402 U.S. 622, 632–35 (1971) (Brennan, J., dissenting).

**5.** *Bruton v. United States, supra* at 130–31, 88 S.Ct. at 1625, also quotes the reasoning of the Supreme Court of California in *People v. Aranda*, 63 Cal.2d 518, 528–29, 407 P.2d 265, 271–72, 47 Cal.Rptr. 353, 359, 360 (1965):

"If it is a denial of due process to rely on a jury's presumed ability to disregard an involuntary confession, it may also be a denial of due process to rely on a jury's presumed ability to disregard a codefendant's confession implicating another defendant when it is determining that defendant's guilt or innocence.

1624, *quoting* Mr. Justice Frankfurter, dissenting in *Delli Paoli v. United States*, 352 U.S. 232, 247, 77 S.Ct. 294, 302, 1 L.Ed.2d 278 (1957), overruled in *Bruton*.

Here the admonition given reduces itself to an anomaly—from the government's standpoint the jury was to consider the officer's rebuttal testimony to determine, hopefully, that Kitching was not telling the truth when he denied that he told the officer that appellant rigged up the flagpole, but the jury was at the same time to disregard Kitching's statement that appellant rigged up the flagpole. This is the "windfall [given to the government] of having the jury ... influenced by evidence against a defendant, which as a matter of law, they should not consider but which they cannot put out of their minds." *Bruton v. United States, supra* at 129, 88 S.Ct. at 1624 *quoting*, Mr. Justice Frankfurter, dissenting in *Delli Paoli.* I would hold that the trial court's instructions here did not ameliorate the prejudice and that the court should have granted the motion for mistrial.

Indeed, the latter task may be an even more difficult one for the jury to perform than the former.... A jury cannot 'segregate evidence into separate intellectual boxes.' (*People v. Chambers*, 231 Cal.App.2d 23, 33, 41 Cal.Rptr. 551, 558)." [Footnote omitted.]

When one adds to the jury's difficulty which the California court describes, the task of compartmentalizing the evidence for credibility purposes of one defendant, as here, the burden becomes nigh impossible.